UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GIBRALTAR HOME IMPROVEMENTS, INC.,

                              Plaintiff,                    **MEMORANDUM AND
                                                           ORDER**

     -against-                                             22-CV-1805 (SIL)

ROCKINGHAM INSURANCE COMPANY,

                              Defendant.
----------------------------------------------------------------X

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this diversity-insurance liability action are: (i) Plaintiff Gibraltar Improvements, Inc.'s ("Plaintiff" or "Gibraltar") motion for partial summary judgment as to liability ("Plaintiff's Motion" or "Pl. Mot."), Docket Entry ("DE") [40]; and (ii) Defendant Rockingham Insurance Company's ("Defendant" or "Rockingham") cross-motion for summary judgment ("Def. Cross-Mot."), DE [41].[1]

By way of Complaint, DE [1], dated March 31, 2022, modified by Amended Complaint ("Am. Compl."), DE [27], dated June 15, 2023, Gibraltar commenced this litigation, asserting four causes of action seeking: (i) a declaration that Rockingham had and continues to have an obligation to defend and indemnify Plaintiff with respect to costs, expenses, attorneys' fees and damages awarded against it in relation to a state court personal injury lawsuit brought against Gibraltar; (ii) an order obligating Defendant to pay or reimburse Plaintiff any sums paid by Gibraltar with respect to that state court lawsuit, including attorneys' fees, expenses,

---

[1] The parties have consented to this Court's jurisdiction for all purposes.  *See* DE [35].

disbursements, and judgments; (iii) a money judgment in the amount of premiums Plaintiff paid Defendant attributable to property damage coverage or, if such amount cannot be determined, a money judgment in the amount of all premiums it paid to Rockingham; and (iv) a money judgment, including attorneys' fees, actual and statutory damages, and interest, pursuant to N.Y. Gen. Bus. Law ("GBL") § 349. Rockingham denies the allegations. *See* Answer, DE [28]. For the reasons set forth herein, the Court denies Plaintiff's Motion in its entirety, denies Defendant's Motion with respect to Gibraltar's first and second causes of action, and grants Defendant's Motion with respect to Gibraltar's third and fourth causes of action.

## I.    BACKGROUND

The facts herein are taken from the parties' Local Rule 56.1 statements, pleadings, declarations and exhibits. Unless otherwise stated, these facts are not in dispute.

### A. Relevant Facts

#### i. The Parties

Gibraltar is a general contractor in the home improvement business, incorporated in New York, with its principal place of business in Floral Park, New York. *See* Defendant's Response to Plaintiff's Statement of Material Facts ("Def. 56.1 Response"), DE [40-4], ¶¶ 1,7; Plaintiff's Response to Defendant's Statement of Material Facts ("Pl. 56.1 Response"), DE [40-7], ¶ 2. Rockingham is an insurance company, organized under Virginia law, with its principal place of business in Harrisonburg, Virginia, that offers, among other things, "casualty insurance covering

personal injury and property damages claims brought against insured general contractors." *Id.*, ¶¶ 2, 5.

### ii. *The Rockingham Policy*

Rockingham issued Gibraltar a commercial liability insurance policy effective April 30, 2018 through April 30, 2019 (the "2018 Policy"). *See* Pl. 56.1 Response, ¶ 4; Stipulation of Joint Exhibits ("Joint Exs. Stip."), DE [41-10], ¶ 11, Ex. 11 at 199. According to Plaintiff, this policy was renewed annually through April 30, 2023. *See* Pl. 56.1 Response, ¶ 2. Defendant disputes that the policy was renewed, and counters that "each year, the [Rockingham] policy consist[ed] of the 'CGL Form,' and endorsements for that policy year." *See* Def. 56.1 Response, ¶ 10. Rockingham defines the "CGL Form" as "the General Liability Coverage [form,] which is a basic form policy used by Rockingham in [New York] and in other states, accompanied by endorsements." *Id.*, ¶ 9; *see* Policy of Insurance effective April 30, 2020 to April 30, 2021 (the "2020 Policy"), Joint Exs. Stip., ¶ 12, Ex. 12.[2] In any event, the policy or policies that Rockingham issued Gibraltar were "occurrence-based," such that the relevant policy covered incidents occurring within the policy period. *See* Pl. 56.1 Response, ¶ 5. The 2020 Policy states that Rockingham "will pay those sums that [Plaintiff] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and "will have the right and duty to defend [Gibraltar] against any 'suit' seeking those damages." *See* 2020 Policy at 221.

---

[2] Policies from other years are not in the record.

### iii.  *The December 4, 2020 Sheetrock Accident*

On April 5, 2021, a child, "DM," and his father sued Gibraltar in state court (the "DM Suit").  The DM Suit alleged that DM was injured on December 4, 2020, after sheetrock allegedly fell on DM at the residence his father owned, during work that Plaintiff performed or oversaw (the "Incident").  *See* Pl. 56.1 Response, ¶¶ 9-13; Joint Exs. Stip., ¶ 8, Ex. 8 (the "DM Complaint" or "DM Compl."), *DM, an infant, et al vs. Gibraltar Home Improvements Inc.*, No: 604148/2021 (Sup. Ct. Nassau Cty. 2021).  The parties do not dispute that the 2020 Policy was in effect on December 4, 2020.  According to the DM Complaint, Gibraltar "controlled, operated, and/or maintained" the work site, and Plaintiff or its "agents, servants, employees and/or subcontractors" were "negligent."  *See* DM. Compl., ¶¶ 9, 13.

According to Gibraltar, the sheetrock was purchased and installed entirely by a subcontractor, LI Custom Millwork, Inc.  *See* Def. 56.1 Response, ¶¶ 29, 31, 66; Plaintiff's Memorandum of Law in Support of Mot. for Partial Summary Judgment ("Pl. Mem.") at 15; Joint Exs. Stip., ¶ 10, Ex. 10, Dep. of Alfredo Llivicura on Behalf of LI Custom Millwork, Inc. ("Llivicura Dep."), 29:12-18, 53:16-18.  Defendant does not dispute that LI Custom Millwork, Inc. was Plaintiff's subcontractor on the project during the time at which the Incident occurred.  *See* Def. 56.1 Response, ¶ 43.

On or before August 10, 2021, Gibraltar notified Rockingham of the Incident.  *See* Pl. 56.1 Response, ¶ 15.  Defendant disclaimed coverage on the basis of three endorsements attached to the 2020 Policy.  Rockingham later waived its reservation under one of these endorsements, and so it is not relevant to the instant motions.  *See*

4

Def. 56.1 Response, ¶ 39; Joint Exs. Stip., ¶ 13, Ex. 13, Deposition of John Daybell ("Daybell Dep.") 53:20-54:17.  The two remaining endorsements on which Defendant based its denial of coverage were:  (i) an endorsement drafted in April 2013 entitled "Exclusion – Construction Management Errors and Omissions" (the "April 2013 Endorsement"); and (ii) an endorsement drafted in May 2018 entitled "Amended Employer's/Contractor's Liability" (the "May 2018 Endorsement"), which contained multiple exclusions.  *See* Def. 56.1 Response, ¶ 36; Joint Exs. Stip., ¶ 1, Ex. 1 at Ex. E ("Denial Letter"); April 2013 Endorsement, 2020 Policy at 263; May 2018 Endorsement, 2020 Policy at 244-46.  By letter to Rockingham, Gibraltar appealed that denial unsuccessfully on November 8, 2021.  *See* Def. 56.1 Response, ¶¶ 37-38; Joint Exs. Stip., ¶ 1, Ex. 1 at Exs. F, G.

The parties agree that after Defendant declined to defend Plaintiff, on November 8, 2021, "Gibraltar sought coverage . . . as an additional insured under the casualty policy issued by [insurance company] Maxum Indemnity Co. ("Maxum") to LI Custom Millwork[, Inc.,] Gibraltar's subcontractor[.]"  *See* Def. 56.1 Response, ¶ 43; Joint Exs. Stip., ¶¶ 17, 20, Exs. 17, 20.  On June 23, 2023, Maxum agreed to defend Gibraltar under a reservation of rights, as an "additional insured primary," "up to the $1,000,000 per occurrence limit."  *See* Def. 56.1 Response, ¶ 46; Joint Exs. Stip., ¶¶ 18, 20, Ex. 18 at 820, Ex. 20.

### iv.  Relevant Original Exclusions in the 2020 Policy

Prior to their modification by later endorsements, the 2020 Policy contained several relevant exclusions.

### 1.  The Original Expected or Intended Injury Exclusion

Within the "Coverage A – Bodily Injury and Property Damage Liability" section of the 2020 Policy, the following exclusion is labeled "a. Expected or Intended Injury":

This insurance does not apply to . . .

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property."

2020 Policy at 222, § I, Coverage A (2)(a) (the "Original Expected or Intended Injury Exclusion.").

### 2.  The Original Employee Bodily Injury Exclusion

Next, within the "Coverage A – Bodily Injury and Property Damage Liability" section of the 2020 Policy, the following exclusion is labeled "e. Employer's Liability":

This insurance does not apply to . . .

"Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
    (a) Employment by the insured; or
    (b) Performing duties related to the conduct of the insured's business; or
(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other insured capacity and to any obligation to share damages with or repay someone else who must pay damages before of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

2020 Policy at 222, § I, Coverage A (2)(e) (the "Original Employee Bodily Injury Exclusion.")

### 3.   The Original Damage to Property Exclusion

Finally, within the "Coverage A – Bodily Injury and Property Damage Liability" section of the 2020 Policy, the following exclusion is labeled "j. Damage to Property":

This insurance does not apply to . . .

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) the particular part of any property that must be restored, repaired or replaced because "your work" was performed incorrectly on it . . .

2020 Policy at 222, § I, Coverage A (2)(j) (the "Original Damage to Property Exclusion").

*v.  Relevant Endorsements to the 2020 Policy*

Each iteration of the policy Defendant issued to Plaintiff contains endorsements, which include the month and year each endorsement was drafted.  *See* Def. 56.1 Response, ¶ 12.  Each endorsement attached to the 2020 Policy "modifies [the] insurance provided" therein.  *See, e.g.*, 2020 Policy at 262.  The parties disagree as to when endorsements became part of a given year's insurance policy.  *See* Def. 56.1 Response, ¶ 13.  According to Gibraltar, an endorsement was incorporated into an existing policy "shortly after [it] was written."  *Id.*, *see* Joint Exs. Stip., ¶ 13, Ex. 13, Daybell Dep., 37:22-38: 13 (testifying that deponent "would say" it is a "safe assumption" that an endorsement dated September 2018 "became a part of the policy sometime shortly after September 2018[.]").  Rockingham disputes this, stating that: "There is no evidence of when the subject endorsements here initially became part of a 'CGL Form.'  The earliest they could have become party of the 'CGL Form' [was] the next policy period."  *See* Def. 56.1 Response, ¶ 13.

1.  The April 2013 Endorsement

Initially, the April 2013 Endorsement contains a single exclusion—the Construction Management Errors and Omissions Exclusion, *see* 2020 Policy at 263, which excludes coverage for "'bodily injury'. . .  arising out of . . . "inspection, supervision, quality control, architectural or engineering activities done by or for [the insured] on a project on which [the insured] serve[s] as a construction manager."  *Id.*  This exclusion contains an exception:  it does not exclude coverage for "'bodily injury' . . . due to construction or demolition work done by [the insured] . . . or [the insured's]

subcontractors." *Id.* Defendant cited the April 2013 Endorsement and the Construction Management Errors and Omissions Exclusion in the Denial Letter, stating that "if it is determined that [Plaintiff] had indeed acted as a construction manager in [the DM Suit], this endorsement would also apply to bar coverage for the suit." Denial Letter at 58. Gibraltar contends that it did not serve as a construction manager on the project leading to the Incident, while Rockingham takes the position that there is a dispute of material fact on this issue. *See* Def. 56.1 Response, ¶ 66; Defendant's Opposition to Pl. Mem. ("Def. Opp."), DE [40-5] at 9-10.

### 2.  The May 2018 Endorsement

Next, The May 2018 Endorsement provides that the Original Employee Bodily Injury Exclusion is "deleted in its entirety and replaced" with a provision titled "e. Employer's/Contractor's Liability" (the "May 2018 Bodily Injury Exclusion"). *See* May 2018 Endorsement, 2020 Policy at 244-45; Pl. 56.1 Response, ¶ 7.  In relevant part, the May 2018 Bodily Injury Exclusion excludes coverage under the 2020 Policy for "'bodily injury' to . . . [a]n invitee of any . . . landowner . . . who is or was present on any site where an insured is . . . conduct[ing] the insured's business, where the 'invitee' is . . . injured" due to the insured party's operations, as well as "'bodily injury' [due to the insured party's operations] to . . . the . . . child" of a landowner of the site where an insured is "conduct[ing] the insured's business." *See* May 2018 Endorsement, 2020 Policy, at 244.

The May 2018 Endorsement also expands the Original Damage to Property Exclusion by stating:

> For the purpose of this exclusion personal property in the care, custody and control of the insured shall include, but not be limited to: i) any personal property of any "employee" of any insured, "business invitee," "contractor," "subcontractor," "invitee" and/or "landowner," and ii) any personal property of any insured, "business invitee," "contractor," "subcontractor," "invitee," and/or "landowner."

May 2018 Endorsement at 245; Def. 56.1 Response, ¶ 25. Further, the May 2018 endorsement adds an exclusion for bodily injury claims brought under the New York Labor Law. *See* May 2018 Endorsement at 245.

In the Denial Letter, Defendant applied the May 2018 Endorsement to "exclude[ ] coverage for bodily injury to an 'invitee' or to the child of the 'landowner' on any site where Gibraltar is performing work where [the injured person] is alleged to have been injured due to the operations of Gibraltar, or by the operations of another party working on behalf of Gibraltar," and avoid liability. Denial Letter at 55-56.

### 3. The September 2018 Endorsement

Finally, an endorsement drafted in September 2018 (the "September 2018 Endorsement"),[3] which is relevant to the Court's analysis for reasons explained below, states in part that:

> Section I, Coverages, Coverage A – Bodily Injury and Property Damage Liability, 2. Exclusions, *paragraph a. and e. are deleted* and replaced with the following of:
> 2. Exclusions
>> This insurance does not apply to:
>>> a. Intentional Injury, Assault, Battery or Assault and battery
>>>> (1) "Bodily injury" or "property damage" expected or intended from the standpoint of any insured; or
>>>> (2) "Bodily injury" or "property damage" arising out of:
>>>>> a. Assault, Battery, or Assault and Battery;

---

[3] Defendant inconsistently refers to the May 2018 Endorsement as the "Endorsement" and the September 2018 Endorsement as "Endorsement A."

> b. Harmful or offensive contact between or among two or more persons;
>
> c. Apprehension of harmful or offensive contact between or among 2 or more persons; or
>
> d. Threat by word or deed.

September 2018 Endorsement, 2020 Policy at 247 (emphasis added).  The September 2018 Endorsement also adds 22 other exclusions, not relevant here, to the "Coverage A - Bodily Injury and Property Damage Liability" exclusions section.  *See id.* at 247-53.

Plaintiff contends that the above-quoted language in the September 2018 Endorsement "deleted the [May 2018] Replacement of Exclusion [e.], which had deleted the Original Employee Bodily Injury Exclusion."  *See* Def. 56.1 Response, ¶ 19.  Defendant disputes this assertion and takes the position that the September 2018 Endorsement did not delete the May 2018 Bodily Injury Exclusion, but rather replaced only "'paragraph a.' of that "'exclusion,'" namely, the Original Expected or Intended Injury Exclusion.  *See id.*, ¶ 18.

It was Rockingham's practice to deny coverage pursuant to the May 2018 Endorsement when the September 2018 Endorsement was attached to the relevant policy.  *See* Defendant's Response to Plaintiff's Supplemental Rule 56.1 Statement ("Def. Supp. 56.1 Response"), DE [41-8], ¶ 3.  Defendant stipulated that "on or after May 18, 2018 all Rockingham policies issued to building contractors should contain [the May 2018 Endorsement] and all Rockingham policies with an effective date on or after September 18, 2019 should contain [the September 2018 Endorsement]."  *See* Feb. 28, 2023 Stip. at ¶ 2.  It is not clear whether "2019" in this sentence was intended

to read "2018," because Defendant's corporate representative, John Daybell, testified that "any policy with an effective date after September 2018 . . . moving forward, should contain [the September 2018 Endorsement]." *See* Daybell Dep., 84:7-14. Daybell testified that, in determining Gibraltar's claim with respect to the DM Suit, he "did not interpret" the September 2018 Endorsement to apply to the Original Employee Bodily Injury Exclusion or the May 2018 Endorsement. *See id.*, 42:17-24.

### vi. *The Excess Coverage Provision*

A final provision of the 2020 Policy is also relevant. The 2020 Policy states that coverage under "Coverage A - Bodily Injury and Property Damage Liability" is "excess over . . . [a]ny other primary insurance available to [the insured] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [the insured] ha[s] been added as an additional insured." *See* 2020 Policy at 232 (the "Excess Coverage Provision"). The Excess Coverage Provision provides that "when . . . insurance is excess, [Rockingham] will have no duty [under "Coverage A – Bodily Injury and Property Damage Liability"] to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.'" *Id.* It also provides that "[i]f no other insurer defends, [Rockingham] will undertake to do so, but [Defendant] will be entitled to the insured's rights against all those other insurers." *Id.*

### B. Procedural History

By way of Complaint, dated March 31, 2022, modified by Amended Complaint, dated June 15, 2023, Gibraltar commenced this suit, asserting four causes of action, seeking: (i) a declaration that Rockingham had and continues to have an obligation

to defend and indemnify Plaintiff with respect to costs, expenses, attorneys' fees and damages awarded against it in relation to the DM Suit; (ii) an order obligating Defendant to pay or reimburse Gibraltar any sums paid by Plaintiff with respect to that suit, including attorneys' fees, expenses, disbursements, and judgments; (iii) a money judgment in the amount of premiums Plaintiff paid Defendant attributable to property damage coverage or, if such amount cannot be determined, a money judgment in the amount of all premiums it paid to Rockingham; and (iv) a money judgment, including attorneys' fees, actual and statutory damages, and interest, pursuant to GBL § 349.

The parties now cross-move for summary judgment, Plaintiff as to liability, and Defendant as to the entire Amended Complaint. *See* Pl. Mot.; Def. Mot. For the reasons set forth herein, the Court denies Plaintiff's Motion in its entirety, denies Defendant's Motion with respect to Gibraltar's first and second causes of action, and grants Defendant's Motion with respect to Plaintiff's third and fourth causes of action.

## II.   LEGAL STANDARDS

### A. Summary Judgment

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021) (*citing Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121

(2d Cir. 2001)). Each movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once a movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are

any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Artis v. Valls*, No. 9:10-CV-427, 2012 WL 4380921, at *6, n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment."). Questions of law are not subject to the same rule. "[T]he Court may decide all questions of law on summary judgment." *AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 74 (E.D.N.Y. 2022) (collecting cases). At the summary judgment stage, a court may consider deposition testimony in another action. *See Linzy v. Uber Techs., Inc.*, 21-CV-05097, 2023 WL 7302643, at *3 (S.D.N.Y. Nov. 6, 2023), *reconsideration denied*, No. 21-CV-05097, 2024 WL 2882186 (S.D.N.Y. June 7, 2024); *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716, 720, n.3 (S.D.N.Y. 2017); *Kanciper v. Lato*, No. 13-CV-0871S, 2016 WL 11507274, at *13 (E.D.N.Y. Dec. 1, 2016), *aff'd*, 718 F. App'x 24 (2d Cir. 2017).

## B. Declaratory Judgment

The Declaratory Judgment Act empowers a federal court to "declare the rights and other legal relations" of an interested party in a "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a); *Kinojuz I.P. v. IRP Int'l Inc.*, No. CV–11–299, 2016 WL 5936875, at *12 (E.D.N.Y. Oct. 12, 2016). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241,

57 S. Ct. 461, 464 (1937).  "Whether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis." *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991).  A court will consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *W. Heritage Ins. Co. v. Jacobs Dev. Corp.*, No. 12-CV-5718, 2014 WL 297792, at *8 (E.D.N.Y. Jan. 27, 2014) (citing *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. C*o., 411 F.3d 384, 389 (2d Cir. 2005)).

## III.   DISCUSSION

Plaintiff moves for partial summary judgment as to liability, *see* Pl. Mem. at 1, while Defendant opposes and cross-moves for summary judgment on all causes of action.  *See* Def. Opp.;  Defendant's Memorandum in Support of Def. Mot. ("Def. Mem."), DE [41-3].  Because the parties cite New York law in their briefing on Plaintiff's state law claims, they have implicitly consented to its application.  *See Meisel v. Grunberg*, 651 F. Supp. 2d 98, 109 (S.D.N.Y. 2009).  For the reasons set forth below, the Court denies Plaintiff's Motion in its entirety, denies Defendant's Motion with respect to Gibraltar's first and second causes of action, and grants Defendant's Motion with respect to Plaintiff's third and fourth causes of action.

### A.  The Duty to Defend

Gibraltar's first cause of action, seeking a declaratory judgment, and second cause of action, seeking a monetary judgment related to the DM Suit, are based, in part, on its contention that Rockingham had and has a duty to defend Plaintiff with

16

respect to the that action. *See* Pl. Mot. at 1-2. For the reasons set forth below, summary judgment on this issue is premature.

Under New York law, an insurer's "duty to defend is triggered by the allegations in the underlying complaint[.]" *See BP Air Conditioning Corp. v. OneBeacon Ins. Grp.*, 8 N.Y.3d 708, 714, 840 N.Y.S.2d 302, 305 (2007). The duty is "exceedingly broad and far more expansive than the duty to indemnify . . . ." *Value Wholesale, Inc. v. KB Ins. Co.*, No. 18-cv-5887, 2020 WL 1536387, at *8 (E.D.N.Y. Mar. 31, 2020) (internal citations omitted). Indeed, an insurer must defend its insured "whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be." *Id.* (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 876 (1984)); *see GMM Realty, LLC v. St. Paul Fire & Marine Ins. Co.*, 129 A.D.3d 909, 909, 11 N.Y.S.3d 661, 662 (2d Dep't 2015) (holding that allegations against an insured must be "construed liberally" and an insurer will owe a defense to the insured if the allegations "suggest a reasonable possibility of coverage"). An insurer's duty to defend applies "[i]f the allegations of the complaint are even potentially within the language of the insurance policy[,]" *see Frank v. Continental Cas. Co.*, 123 A.D.3d 878, 880, 999 N.Y.S.2d 836, 838 (2d Dep't 2014), "even though facts outside the four corners of the pleadings indicate that the claim may be meritless or not covered." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014). Rockingham contends that: (i) it is entitled to summary judgment on this issue, as it has no duty to defend under a bodily injury exclusion;

and (ii) in the alternative, an issue of material fact exists as to whether the Incident is also excluded under a construction manager exclusion, which would preclude summary judgment in Gibraltar's favor.  The Court considers each argument in turn.

### i. *Bodily Injury Coverage under the 2020 Policy*

Initially, Plaintiff argues that it is entitled to:  (i) a declaratory judgment that "Rockingham had and continues to have an obligation to defend and indemnify Gibraltar with respect to any costs, expenses . . . [and] damages awarded against Gibraltar[,] . . . and reasonable attorney fees involved in Gibraltar's defense of [the DM Suit]"; and (ii) an order obligating Defendant to pay any current or future "sums," including a "judgment," "attorneys fee[s], expenses, and disbursements" related to the DM Suit.  *See* Pl. Mot at 2; Pl. Mem. at 17.  Defendant counters that the events leading to the DM Suit are excluded from coverage by the May 2018 Bodily Injury Exclusion, because DM was an invitee and/or a child of the landowner.  *See* Def. Mem. at 8.  As explained above, Plaintiff takes the position that while the May 2018 Bodily Injury Exclusion replaced the Original Employee Bodily Injury Exclusion, the September 2018 Endorsement in turn deleted the May 2018 Bodily Injury Exclusion, and that the Original Employee Bodily Injury Exclusion was not subsequently replaced.  *See* Pl. Mem. at 4-5.

When interpreting coverage, "[t]he unambiguous terms of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such terms is a question of law for the court." *Viznitz v. Church Mut. Ins. Co.*, 132 A.D.3d 853, 854, 18 N.Y.S.3d 168, 170 (2d Dep't 2015) (internal citations omitted); *see*

18

*Rosano v. Freedom Boat Corp.*, No. 13-CV-842, 2015 WL 4162754, at *3 (E.D.N.Y. July 8, 2015) ("Construction of an insurance policy is governed by the rules of construction applicable to contracts generally . . . and an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.") (internal quotation and citations omitted).

An insurer that relies on an exclusion clause to deny coverage "has the burden of demonstrating that the 'allegations of the complaint cast that pleading solely and entirely within the policy exclusions and, further, that the allegations, *in toto*, are subject to no other interpretation.'" *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73–74, 544 N.Y.S.2d 531, 533 (1989) (quoting *International Paper Co. v Continental Cas. Co.*, 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 875 (1974)). If it fails to meet this burden, the insurer is "required to provide a defense." *Euchner-USA, Inc.*, 754 F.3d at 142. Moreover, "policy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383, 763 N.Y.S.2d 790, 792 (2003).

An endorsement to a policy may "alter . . . the words" of that policy. *Penna v. Fed. Ins. Co.*, 28 A.D.3d 731, 732, 814 N.Y.S.2d 226, 228 (2d Dep't 2006) (quoting *Cnty. of Columbia v. Cont'l Ins. Co.*, 83 N.Y.2d 618, 628, 634 N.E.2d 946, 950 (1994)). Where two endorsements conflict, and "it is equally plausible that one controls over the other," the endorsements are ambiguous, and a court may consider extrinsic evidence of the parties' intent. *Travelers Prop. Cas. Co. of Am. v. Wesco Ins. Co.*, 585 F. Supp. 3d 463, 472 (S.D.N.Y. 2022) (citing *Port Auth. of N.Y. & N.J. v. Brickman*

*Ltd., LLC*, 181 A.D.3d 1, 12 n.12, 115 N.Y.S.3d 246, 254 n.12 (1st Dep't 2019).  "If extrinsic evidence does not reveal the parties' intent, it is appropriate for a court to resort to other rules of construction, including the contra-insurer rule, which states that any ambiguity in an insurance policy should be resolved against the insurer." *Travelers Prop. Cas. Co. of Am*., 585 F. Supp. 3d at 471 (citation omitted); *see Brickman Ltd., LLC*, 181 A.D.3d at 12 n.12, 115 N.Y.S.3d at 254 n.12; *see also Olin Corp. v. OneBeacon Am. Ins. Co*., 864 F.3d 130, 148 (2d Cir. 2017) ("If the extrinsic evidence fails to establish the parties' intent, courts [on summary judgment] may apply other rules of contract interpretation, including New York's insurance-specific version of the rule of *contra proferentem,* according to which ambiguity should be resolved in favor of the insured."); *Syracuse Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 40 Misc. 3d 1205(A) at *3 n.1, 975 N.Y.S.2d 370 n.1 (Onondaga Cty. Sup. Ct.), *aff'd,* 112 A.D.3d 1379, 976 N.Y.S.2d 921 (2013) ("Where, as here, there is no basis for favoring one endorsement over another endorsement, any ambiguity raised by the conflicting endorsement is construed in favor the plaintiff, the insured."); *Reisman v. Coleman*, 193 A.D.2d 659, 660, 598 N.Y.S.2d 12, 12 (2d Dep't 1993) ("[T]here are conflicting endorsements in the subject insurance policy.  It is well established that an insurance policy must be construed in favor of the policy holder if reasonably susceptible to two different constructions, and any ambiguities are to be resolved in favor of the policy holder and against the carrier.").  "However, 'if extrinsic evidence is available but inconclusive,' . . . or it 'raises a question of credibility or presents a choice among reasonable inferences,' . . . the ambiguity in

question should be considered at trial, rather than applying the *contra proferentem* rule at the summary judgment stage." *Park Electrochemical Corp. v. Cont'l Cas. Co.*, No. 04-CV-4916, 2011 WL 703945, at *3 (E.D.N.Y. Feb. 18, 2011) (citing *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000)).

Here, the May and September 2018 Endorsements conflict: each purports to delete the Original Employee Bodily Injury Exclusion, but each states that it replaces that exclusion with different text. The May 2018 Endorsement purports to delete and replace it with the May 2018 Bodily Injury Exclusion. *See* May 2018 Endorsement, 2020 Policy at 244-45. The September 2018 Endorsement, on the other hand, deletes and replaces both the Original Expected or Intended Injury Exclusion and the Original Employee Bodily Injury Exclusion with an exclusion titled "a. Intentional Injury, Assault, Battery or Assault and battery." *See* September 2018 Endorsement, 2020 Policy at 247. The September 2018 Endorsement also adds 22 additional exclusions that exclude coverage for bodily injury to any person. *See id*. at 247-53.

There is no indication that the September 2018 Endorsement supersedes the May 2018 Endorsement, as Gibraltar argues. *See* Pl. Mem. at 4-5. The 2020 Policy contains a schedule of forms that apply to the Commercial General Liability portion of the 2020 Policy, which includes the relevant exclusions. *See* 2020 Policy at 218-19. Both the May 2018 Endorsement and the September 2018 Endorsement are included in that schedule. *See id.* Thus, as of April 30, 2020, both endorsements were incorporated into the 2020 Policy, with no clear hierarchy between the two. Accordingly, the 2020 Policy is ambiguous with respect to the May 2018 and

September 2018 Endorsements, because under the two endorsements, the Original Employee Bodily Injury Exclusion is deleted and replaced with two different provisions.

As a result, the Court looks first to extrinsic evidence to determine the parties' intent. *See Travelers Prop. Cas. Co. of Am.*, 585 F. Supp. 3d at 472; *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012). The parties point to little evidence in this regard. Plaintiff contends that "the description of Gibraltar's business" as a "general contractor" in its applications for insurance to Rockingham demonstrates that "Gibraltar's purpose in applying for this commercial insurance was to insure against the major risks posed by Gibraltar's renovations and repair activities at the project when subcontractors perform the work that was the subject of Gibraltar's contract with its customer." Pl. Mem. at 11-12. The insurance applications submitted by the parties indeed state that Plaintiff is applying as a "GENERAL CONTRACTOR (100% SUBBED OUT)," and categorize Gibraltar as "100% PAPER G.C. – EVERYTHING SUBBED OUT," but offer no other evidence to interpret these terms. *See* Joint Exs. Stip., ¶ 11, Ex. 11. Defendant offers "the conduct of the parties" as extrinsic evidence, but does not describe any such "conduct," other than Plaintiff's purchase of a policy effective April 30, 2018, prior to the incorporation of the May and September 2018 Endorsements, and Gibraltar's subsequent applications for future policies. *See* Def. Opp. at 3-4. Neither party explains what this extrinsic evidence is intended to demonstrate with respect to what the parties intended to replace the Original Employee Bodily Injury Exclusion.

Because "the extrinsic evidence fails to establish the parties' intent," the Court "may apply other rules of contract interpretation, including New York's insurance-specific version of the rule of *contra proferentem*, according to which ambiguity should be resolved in favor of the insured." *Olin Corp.*, 864 F.3d at 148.  Accordingly, the Court resolves the ambiguity set forth above in Plaintiff's favor, and concludes that the September 2018 Endorsement (and not the May 2018 Bodily Injury Exclusion) replaced the Original Employee Bodily Injury Exclusion.  The September 2018 Endorsement does not categorically exclude coverage for bodily injury to invitees or children of the landowner.  Thus, it does not bar Gibraltar's bodily injury claim.

Defendant makes several arguments to the contrary, none persuasive. Initially, Rockingham's argument that such a reading is "absurd" or "render[s] the [May 2018] Endorsement meaningless" is unavailing.  *See* Def. Mem. at 8-10. Contrary to Defendant's argument, the text of the May 2018 Endorsement is not limited to the May 2018 Bodily Injury Exclusion.  *See* 2020 Policy, May 2018 Endorsement.  As explained above, the May 2018 Endorsement also adds an exclusion based on New York Labor Law liability and amends the Original Damage to Property Exclusion.  *See id.* at 245-26.  Thus, the May 2018 Endorsement as a whole is not rendered meaningless by the Court's construction. Further, the September 2018 Endorsement alone adds 23 exclusions to bodily injury coverage under the 2020 Policy, which itself contains multiple additional bodily injury exclusions.  *See* 2020 Policy at 222-26, September 2018 Endorsement at 247-53. Accordingly, the Court's resolution of the endorsement ambiguity in favor of coverage

here does not equate to a reading of the 2020 Policy that "grant[s] coverage for any 'bodily injury' to any person at a covered property (if caused by Gibraltar)." *See* Def. Mem. at 9-10.  Moreover, bodily injury, including bodily injury to children of the landowner or to invitees, may be excluded from coverage if it falls into one of the dozens of other exclusions throughout the policy.

Next, Defendant's citations to New York caselaw holding that *exclusions* cannot be regarded as inconsistent with one another are inapposite.  *See* Def. Mem. at 8-9; Defendant's Reply ("Def. Reply"), DE [41-7], at 2-3.  It is the May and September 2018 Endorsements that are inconsistent in how they modify one exclusion, the Original Employee Bodily Injury Exclusion, and, as explained above, New York caselaw is clear on how to address conflicting endorsements.  *See Syracuse Univ.,* 40 Misc. 3d 1205(A) at *2 n.1, 975 N.Y.S.2d 370 n.1 (Onondaga Cty. Sup. Ct.), *aff'd*, 112 A.D.3d 1379, 976 N.Y.S.2d 921 (4th Dep't 2013); *Reisman v. Coleman*, 193 A.D.2d 659, 660, 598 N.Y.S.2d 12, 12 (2d Dep't 1993).

Further, Rockingham points to the rule against surplusage, which dictates that "contract interpretations that render provisions of a contract superfluous" are "disfavored." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002).  This rule does not resolve the ambiguity at hand, because here, applying Defendant's logic, either the May 2018 Bodily Injury Exclusion, or the text of the September 2018 Endorsement stating that, within "Coverage A - Bodily Injury and Property Damage Liability," "paragraph a. *and e. are* deleted *and replaced with*" the replacement exclusion, is superfluous.  *See* September 2018 Endorsement, 2020

24

Policy at 247 (emphasis added).   So this rule does not aid the Court's analysis. Accordingly, again it is appropriate to turn to other rules of construction, including *contra proferentem*, which the Court applies above.

Finally, for the first time in its Reply, Defendant argues that the relevant language of the September 2018 Endorsement is a "typographical error."   *See* Def. Reply at 6.   A typographical error will not create ambiguity in an endorsement where "the error notwithstanding, the exclusionary import of the endorsement is clear," *Behrens v. City of New York*, 279 A.D.2d 407, 408, 720 N.Y.S.2d 64, 65 (1st Dep't 2001), and where the error "does not alter the overall meaning of the clause in any way." *Huff v. Watson Servs., Inc.*, No. 07-CV-6033, 2009 WL 382729, at *8 (S.D.N.Y. Feb. 13, 2009) (citation omitted).   But that is not the case here.   The September 2018 Endorsement includes the word "and" between "paragraph a." and "e.," as well as the plural verb "are," each of which signifies the intent to cite multiple paragraphs.   *See* September 2018 Endorsement, 2020 Policy at 247.   It is not clear that the words "and," "[paragraph] e.," and "are" were all typographical errors, as Rockingham suggests.   And their presence "alter[s] the overall meaning of the clause," *Huff*, 2009 WL 382729, at *8, and muddies the "exclusionary import of the endorsement." *Behrens*, 279 A.D.2d at 408, 720 N.Y.S.2d at 65.   Accordingly, the Court rejects this argument.

### ii. The Construction Management Errors and Omissions Exclusion

Defendant also contends that a genuine issue of material fact exists as to whether Plaintiff was a "construction manager" within the meaning of the

25

Construction Management Errors and Omissions Exclusion of the April 2013 Endorsement, rendering summary judgment in Gibraltar's favor inappropriate. Plaintiff argues that this exclusion is inapplicable, because "the placement of sheetrock, which was the circumstance DM alleges resulted in [his] alleged injuries, was not of Gibraltar's doing, or its responsibility," and because Plaintiff did not act as a construction manager. *See* Pl. Mem. at 16; Pl. 56.1, ¶ 66. Gibraltar also contends that the Construction Management Errors and Omissions Exclusion only excludes coverage for injuries "arising out of" Plaintiff's role as a construction manager, and that DM's injury did not arise out of any action on Gibraltar's part. *See* Pl. Reply at 6.

According to the DM Complaint, Gibraltar "controlled, operated, and/or maintained" the work site, and it or its "agents, servants, employees and/or subcontractors" were "negligent." *See* DM. Compl., ¶¶ 9, 13. The Construction Management Errors and Omissions Exclusion excludes coverage for "'bodily injury'. . . arising out of . . . "inspection, supervision, quality control, architectural or engineering activities done by or for [the insured] on a project on which [the insured] serve[s] as a construction manager," but does not exclude "'bodily injury' . . . due to construction or demolition work done by [the insured] . . . or [the insured's] subcontractors." *See* April 2013 Endorsement, Construction Management Errors and Omissions Exclusion, 2020 Policy at 263.[4]

---

[4] The Court initially notes that neither party cites the exception to the Exclusion for "construction . . . work done by . . . [the insured's] subcontractors" in their briefing, and so the Court does not consider the applicability of that exception.

The 2020 Policy does not define "construction manager," nor is one settled in New York law.  *See W. Waterproofing Co., Inc. v. Zurich Am. Ins. Co.*, No. 20-CV-3199, 2022 WL 329225, at *15 (S.D.N.Y. Feb. 3, 2022), *reconsideration denied*, No. 20-CV-3199 (AJN), 2022 WL 1501087 (S.D.N.Y. May 11, 2022) (citing Sarah B. Biser et al., 33 N.Y. Practice, New York Construction Law Manual § 1:13 (2d ed. 2021)) ("There is no established definition of who a construction manager is or what a construction manager's responsibilities are or should be; great variations are possible, allowing the role of a construction manager to be tailored to each job.").

As to the parties' arguments, Gibraltar points to two pieces of evidence in support of its contention that it did not act as a construction manager:  (i) the deposition testimony of Alfredo Llivicura on behalf of LI Custom Millwork, Inc., *see* Llivicura Dep.; and (ii) the declaration of Margaret Gamba, office manager of Gibraltar.  *See* Decl. of Margaret Gamba ("Gamba Decl."), DE [40-1].  In his deposition, Llivicura testified that LI Custom Millwork, Inc. purchased and installed the sheetrock that allegedly injured DM.  *See* Llivicura Dep., 29:12-17, 50:13-18, 53:16-17.  Margaret Gamba states that "Gibraltar [does] not act as a construction manager for any projects it agrees to complete."  Gamba Decl., ¶ 8.  Defendant, on the other hand, refers to excerpts of Llivicura's deposition in which he testified that a Gibraltar representative met with LI Custom Millwork, Inc. at the DM residence and "explain[ed] to [him] things with the cabinets" and "came just to see the job."  *See* Def. Opp. at 6-7; Llivicura Dep. at 60:3-10, 27:1-7.  Due to these conflicting facts and a lack of a clear definition for "construction manager" in the 2020 Policy or established

27

New York precedent, the Court concludes that summary judgment is inappropriate on this issue.  *See Euchner-USA, Inc.*, 754 F.3d at 142 (an insurer "disclaim[ing] coverage on the basis of an exclusion" is "required to provide a defense unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions.") (citing *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137, 850 N.E.2d 1152, 1155 (2006)).

As to the remaining exclusions cited in Defendant's denial of coverage, as explained above, the Court concludes that Plaintiff's claim for defense is not barred the May 2018 Endorsement, and Rockingham waived its reservation under the remaining cited exclusion.  *See* Def. 56.1 Response, ¶ 39.  Thus, no exclusion bars Gibraltar's claim for coverage, and the only remaining issue is whether the Excess Coverage Provision absolves Defendant of its duty to defend.

### iii.  The Excess Coverage Provision

Rockingham argues in the alternative that even if a defense were otherwise warranted, Gibraltar's claims under the duty to defend are defeated by the Excess Coverage Provision, although Defendant does not affirmatively move for summary judgment on that ground.  *See* Def. Opp. at 7-8; Def. Reply at 1-2.  "Where its policy has been triggered, a primary insurer has a primary duty to defend its insureds, whereas an excess insurer has no obligation to do so." *AVR-Powell C Dev. Corp. v. Am. States Ins. Co.,* 210 A.D.3d 403, 404, 176 N.Y.S.3d 638, 639 (1st Dep't 2022) (citing *General Motors Acceptance Corp. v. Nationwide Ins. Co.*, 4 N.Y.3d 451, 455-456, 796 N.Y.S.2d 2, 828 N.E.2d 959 (2005)).  "Coverage under an excess policy thus

is triggered when the liability limits of the underlying primary insurance policy have been exhausted." *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 (2d Cir. 2013); *see Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436, 455 (S.D.N.Y. 2019) ("to the extent that any given Excess Insurer's policy goes untriggered, [the primary insurer] will not be entitled to contribution from that Excess Insurer with respect to the indemnification or defense costs associated with the Underlying Claims.").

Here, the Excess Coverage Provision states that coverage under "Coverage A - Bodily Injury and Property Damage Liability" is "excess over . . . [a]ny other primary insurance available to [the insured] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [the insured] ha[s] been added as an additional insured." *See* 2020 Policy at 232.  The Excess Coverage Provision provides that "when . . . insurance is excess, [Rockingham] will have no duty [under "Coverage A – Bodily Injury and Property Damage Liability"] to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.'" *Id.*  It also provides that "[i]f no other insurer defends, [Rockingham] will undertake to do so, but [Defendant] will be entitled to the insured's rights against all those other insurers." *Id.*

On November 8, 2021, after Defendant declined to defend Plaintiff, Gibraltar sought coverage from Maxum as an additional insured under the casualty policy Maxum issued to LI Custom Millwork, Inc.  *See* Def. 56.1 Response, ¶ 43; Joint Exs. Stip., ¶ 17, Ex. 17.  On June 23, 2023, Maxum agreed to defend Gibraltar under a reservation of rights, as an "additional insured primary," "up to the $1,000,000 per

occurrence limit." *See* Def. 56.1 Response, ¶ 46; Joint Exs. Stip., ¶¶ 18, 20, Ex. 18 at 820, Ex. 20.  Maxum's letter agreeing to defend Plaintiff cited a provision of the applicable Maxum policy, which is not provided in its entirety, stating that Maxum has a "duty to defend the insured" against suits seeking covered bodily injury damages.  *See* Joint Exs. Stip., ¶ 18, Ex. 18 at 818-19.  That letter also reserved Maxum's right to withdraw from Gibraltar's defense if Maxum determined that the damages in the DM Suit were not covered by the applicable Maxum policy.  *See id.* at 820.

Applying these facts, because Maxum conceded that it had a duty to defend and agreed to defend Plaintiff as a primary insurer, *see* Joint Exs. Stip., ¶ 18, Ex. 18., Rockingham's duty to defend has not been triggered based on the record evidence. *See* 2020 Policy, Excess Coverage Provision.  Nevertheless, the record is devoid of evidence indicating whether Maxum is still defending Plaintiff, or whether its policy limit has been reached, and so summary judgment is premature.  If Maxum exercises its reservation to withdraw from Gibraltar's defense or reaches its policy limits, Defendant may have a duty to defend.  *See Danaher Corp.*, 414 F. Supp. 3d at 455. Accordingly, while the Court concludes that Plaintiff's defense is not precluded by the 2020 Policy's exclusions or endorsements, the Court denies without prejudice the portions of Plaintiff's Motion seeking: (i) a declaration that Rockingham had and continues to have a duty to defend Gibraltar; and (ii) an order obligating Defendant to pay Plaintiff's attorneys' fees and expenses accrued against it in the DM Suit.

## B. The Duty to Indemnify

"The duty to indemnify is unquestionably narrower than the duty to defend." *Specialty Nat. Ins. Co. v. English Bros. Funeral Home*, 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009) (citing *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 669, 439 N.Y.S.2d 858, 861 (1981)). As a result, courts in the Second Circuit generally deny the indemnification portions of declaratory judgment and summary judgment actions, where, as here, there is no determination as to liability in an underlying state court action reflected in the record. *See, e.g., Lighton Indus., Inc. v. Allied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167, 196 (E.D.N.Y. 2018) ("where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties, it is entirely appropriate for a district court to dismiss a declaratory judgment action.") (citing *Westport Ins. Corp. v. Hamilton Wharton Grp. Inc.*, 483 F. App'x 599, 604 (2d Cir. 2012) (internal quotations, brackets, and ellipses omitted)); *see Am. Auto. Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp. 2d 454, 465 (E.D.N.Y. 2012) ("An action to declare the insurer's duty to indemnify is premature and does not lie where the complaint in the underlying action alleges several grounds of liability, some of which invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action.") (internal quotations and citations omitted).

Here, the record is devoid of evidence indicating whether Gibraltar has been found liable in the DM Suit. Thus, there is currently no basis for Rockingham to

indemnify Plaintiff.  *Cf. Lighton Indus., Inc.*, 348 F. Supp. 3d at 196 ("At this time, there is no liability for which defendants could indemnify plaintiffs").  Moreover, the outcome of the DM Suit will determine the extent of any liability.  If Gibraltar is absolved of liability in state court, then it necessarily follows that it will have no basis to seek indemnity from Defendant.  Finally, as explained above, the Rockingham policy is excess to the Maxum policy, and there is no evidence before the Court reflecting whether the Maxum policy's limits have been reached.  Accordingly, the Court denies without prejudice the parties' motions with respect to Plaintiff's first and second causes of action.

### C. Illusory Policy Coverage

In its third cause of action, Gibraltar seeks "disgorgement of the consideration [it paid]" Rockingham for "property damage" coverage on the grounds that the relevant annual policy between the parties is illusory as to that category of coverage.  *See* Pl. Mem. at 17-18.  Defendant moves for summary judgment on this claim.  *See* Def. Mot. For the reasons set forth below, the Court grants Defendant's Motion as to this cause of action.

According to Plaintiff, the Original Damage to Property Exclusion and its expansion in the May 2018 Endorsement render the 2020 Policy—and perhaps the preceding and following policies, although Gibraltar is not clear on this point— illusory from "the view point of a paper general contractor such as Gibraltar."  *See id.* at 20.  Moreover, Plaintiff argues, "Rockingham's requirement that 'paper contractors' . . . obtain[ ] a certificate of insurance listing the insured as an additional

insured with respect to bodily injury[ ] and property damage . . . renders Rockingham's insurance of 'paper contractors' . . . excess[.]"  *Id.*  According to Gibraltar, the language in the 2020 Policy stating that coverage is "primary" unless the Excess Coverage Provision applies, *see* 2020 Policy at 232, is "misleading[ ]" because in the case of an insured like Gibraltar, which "subcontracts out all of its work, virtually all coverage would be excess."  Pl. Mem. at 21.  Plaintiff also contends that "Gibraltar would not ordinarily be liable for the acts of its subcontractors, or other independent contractors."  *Id.*  Finally, Gibraltar argues that an insured purchasing the 2020 Policy "would have reasonably expected:  (1) coverage of property damage that occurred during construction at the work site; (2) coverage of property of the owner of such site[;] (3) coverage of the property of 'invitees', (a term so broadly defined by Rockingham as to essentially include anyone with permission to be at the site)[;]" and (4) "primary insurance."  *See* Pl. Reply at 7.

### i. *Article III Standing*

Before reaching the merits of Plaintiff's argument, the Court must address Defendant's contention that Gibraltar lacks standing to bring this cause of action because Plaintiff has not been denied coverage for a property damage claim, and therefore lacks injury in fact.  *See* Def. Reply at 6-7.  Under Article III of the United States Constitution, a federal court's jurisdiction is limited to "cases" and "controversies."  U.S. Const. Art. III, § 2.  "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 2203

(2021) (citation omitted).  If a plaintiff in federal court lacks Article III standing, that court lacks federal subject matter jurisdiction.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005).  To maintain Article III standing, a plaintiff must allege facts sufficient to establish:  "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC*, 594 U.S. at 423, 141 S. Ct. at 2203; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136-37 (1992).

Under New York law, an illusory contract is unenforceable and void for lack of consideration.  *See Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 684, 71 N.E.3d 556, 562 (2017) (citation omitted); *In re The Containership Co.*, No. 11-12622, 2016 WL 2341363, at *8 (Bankr. S.D.N.Y. Apr. 29, 2016), *report and recommendation adopted sub nom. In re The Containership Co. (TCC) A/S*, 611 B.R. 729 (Bankr. S.D.N.Y. 2019), *aff'd* 828 F. App'x 61 (2d Cir. 2020).  A plaintiff who "argue[s] [it] paid premiums for . . . insurance policies that are . . . void *ab initio* or, in the alternative, voidable" has alleged "injury in fact for the purposes of Article III standing."  *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 (2d Cir. 2018) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39, 136 S. Ct. 1540, 1547-48 (2016), *as revised* (May 24, 2016)).  Plaintiff here alleges that it paid premiums on a void or voidable policy.  Accordingly, Gibraltar has established Article III standing as to this claim.

### ii. Coverage Under the Gibraltar-Rockingham Policy is not Illusory.

Turning to the merits, under New York law, a contract is "illusory," and therefore unenforceable, when "one party gives as consideration a promise that is so insubstantial as to impose no obligation." *Lend Lease (US) Const. LMB Inc.*, 28 N.Y.3d at 684, 71 N.E.3d at 562 (citation omitted). "Insurance coverage is illusory where the insured purchases no effective protection." *Children's Apparel Network Ltd. v. Twin City Fire Ins. Co.*, No. 18-10322, 2019 WL 3162199, at *5 (S.D.N.Y. June 26, 2019) (citation omitted). By contrast, "[a]n insurance policy is not illusory if it provides coverage for some acts subject to a potentially wide exclusion." *Lend Lease (US) Const. LMB Inc.*, 28 N.Y.3d at 684, 71 N.E.3d at 562 (citation omitted).

Gibraltar fails to demonstrate that the 2020 Policy is illusory. As Rockingham explains, the 2020 Policy covers damages where a neighbor or passerby suffered property damage. *See* Def. Mem. at 10; Joint Exs. Stip., ¶ 16, Ex. 16. at 694-716 (Rockingham letter agreeing to defend an insured who purchased a Commercial General Liability policy similar or identical to the 2020 Policy, where the resident of a neighboring apartment allegedly suffered property damage as a result of the insured's remodeling work next door). True, the 2020 Policy contains a broad property damage exclusion. It appears that this Policy was a poor fit for the coverage Gibraltar would have preferred. But even an exclusion that is "exceptionally broad," which bars coverage for the "most likely allegations" brought against an insured, does not render a policy illusory if that policy "provides coverage for *some* losses." *Spandex House, Inc. v. Hartford Fire Ins. Co.*, 407 F. Supp. 3d 242, 263 (S.D.N.Y. 2019), *aff'd*,

816 F. App'x 611 (2d Cir. 2020) (emphasis in original).  Accordingly, Defendant's Motion is granted and Plaintiff's motion is denied as to Gibraltar's third cause of action.

Plaintiff's four arguments to the contrary miss the mark.  Initially, Gibraltar argues that the New York Court of Appeals' *Lend Lease* decision permits a court to divide an insurance policy into portions and conclude that one portion is illusory and another non-illusory.  *See* 28 N.Y.3d at 684, 71 N.E.3d at 562; Pl. Mem. at 19.  In *Lend Lease*, the court analyzed only whether one provision was illusory, because the challenged exclusion was located within that provision.  *Id.*, 28 N.Y.3d at 685, 71 N.E.3d at 562.  Concluding that the challenged exclusion did not "defeat *all* of the coverage afforded under" that provision, and that provision was therefore not illusory, the court did not address the rest of the policy.  *See id.* (emphasis in original).  Thus, the court did not reach the issue for which Gibraltar relies on *Lend Lease,* namely whether a policy with one illusory category is void, in part or in whole, if the rest of the policy provides coverage.  Moreover, the Court is not aware of any case in which a court ordered disgorgement of insurance premiums because one provision or category of an insurance policy was illusory.

Next, Gibraltar argues that it reasonably expected the 2020 Policy to cover property damage at the worksite, as well as personal property of those with permission to be there.  But a policy is not illusory merely because the insured expects it to cover more than it does.  *See Spandex House, Inc.*, 407 F. Supp. 3d at 263.  Moreover, *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.* and *Madawick Contracting*

*Co. v. Travelers Ins. Co.*, cited by Plaintiff, are inapposite—these cases explain that courts construing ambiguous contract provisions should avoid an interpretation that would render a provision illusory, but do not reach the issue of whether a Court should order disgorgement of insurance premiums.  *See* 34 N.Y.2d 356, 361, 314 N.E.2d 37 (1974); 307 N.Y. 111, 119, 120 N.E.2d 520 (1954); Pl. Mem. at 17-18.

Further, Gibraltar argues that the 2020 Policy is illusory because it requires Plaintiff and any subcontractors to obtain a certificate of insurance listing Gibraltar as a primary additional insured, even though Plaintiff "would not ordinarily be liable for the acts of its subcontractors, or other independent contractors."  Pl. Mem. at 21. This statement of the law is an oversimplification, because New York law recognizes several exceptions.  *Bros. v. New York State Elec. & Gas Corp.*, 11 N.Y.3d 251, 258, 898 N.E.2d 539, 542 (2008).  For example, if a contractor is negligent in "selecting, instructing, or supervising" a subcontractor, or contracts out "inherently dangerous" work, that contractor may be held liable for the acts of its subcontractor.  *See id.* at 542-43 (citations omitted).  Accordingly, this argument does not hold water.

Finally, Plaintiff does not attempt to explain why an excess policy that provides excess coverage is illusory.  Excess coverage still provides "coverage for some acts." *Lend Lease (US) Const. LMB Inc.*, 28 N.Y.3d at 685, 71 N.E.3d at 562.  Accordingly, summary judgment in favor of Defendant is appropriate on this claim.

### D. Deceptive Practices under GBL § 349

In its fourth cause of action, Plaintiff seeks a money judgment, including attorneys' fees, actual and statutory damages, and interest, pursuant to GBL § 349.

*See* Pl. Mem. at 21-25.  GBL § 349 renders unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349 (a).  A plaintiff bringing a deceptive practices action under GBL § 349 must demonstrate that "(1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 176, 171 N.E.3d 1192, 1197 (2021).

"Consumer-oriented" conduct must have "a broad impact on consumers at large" to fall within the ambit of GBL § 349.  *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290 (1995).  Courts in this Circuit generally hold that insurance disputes "are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349." *Fishberg v. State Farm Fire & Cas. Co.*, No. 20-CV-6664, 2021 WL 3077478, at *4 (S.D.N.Y. July 20, 2021) (citation omitted).  "The one instance where such GBL § 349 claims have been allowed to proceed are those where the plaintiffs alleged that they purchased insurance policies based on defendants' false representations regarding the terms of the insurance policies." *Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.*, No. CV-09-1640, 2012 WL 1077448, at *15 (E.D.N.Y. Mar. 9, 2012), *report and recommendation adopted*, 2012 WL 1078994 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 514 F. App'x 21 (2d Cir. 2013); *see, e.g.*, *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 125 (2d Cir. 2017) (denying summary judgment on an insurance-

dispute GBL § 349 where plaintiff produced evidence that "insurer, as a matter of practice, misled consumers" who entered into a "standard form contract" by falsely claiming that it paid repair shops at the prevailing labor rate.). Here, the parties do not dispute that the 2020 Policy included a "basic form policy used by Rockingham" across the country. *See* Def. 56.1 Response, ¶ 9. Such a policy is akin to the "standard form contract" issued by the insurer in *Nick's Garage, Inc.*, which the Second Circuit held "affect[ed] the public generally." 875 F.3d at 125. Thus, Plaintiff has met its burden to produce evidence that Defendant's conduct was "consumer-oriented."

Nevertheless, as explained above, Gibraltar must also demonstrate that Rockingham deceived or misled it. Plaintiff argues that Defendant did so in two ways: (i) by failing to state in coverage denial letters that the September 2018 Endorsement purportedly deleted the May 2018 Endorsement, which allegedly in turn deleted the Original Employee Bodily Injury Exclusion; and (ii) by "deceptively eviscerat[ing] promised basic property coverage with exclusions that so comprehensively alter coverage of property damage that the coverage was rendered meaningless, or close to it, from the prospective of paper general contractors." *See* Pl. Mem. at 22-25. As to Plaintiff's first point, the Court has already determined that the September 2018 Endorsement did not delete the May 2018 Endorsement. Accordingly, Rockingham did not engage in a deceptive practice when it failed to alert its insured of that purported deletion.

Gibraltar's second point is essentially another attempt to cast the 2020 Policy as "illusory," which argument the Court has already rejected, as explained above. *See*

Pl. Mem. at 24-25.  Plaintiff argues that even if the 2020 Policy is not illusory, the property damage exclusions within "rendered . . . coverage . . . meaningless, or close to it, from the prospective [*sic*] of paper general contractors," *id.* at 25, because "it is essentially an excess policy covering situations where [Gibraltar] would not, in any event, be liable under the law." Plaintiff's Opposition to Defendant's Motion ("Pl. Opp."), DE [41-5], at 18.  None of this explains what Rockingham did to "deceive" or "mislead" Plaintiff.  As explained above, the 2020 Policy states the terms under which it operates as an excess policy.  *See* Excess Coverage Provision, 2020 Policy at 232. At no point does Gibraltar allege or show that Rockingham did not follow the terms of its own Excess Coverage Provision.  Moreover, insurance policies that are primary under some circumstances and excess under others are not unprecedented.  *See Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*, 122 F. Supp. 3d 143, 155 (S.D.N.Y. 2015), *aff'd*, 653 F. App'x 66 (2d Cir. 2016) ("a primary policy with an excess other insurance clause is a device by which a primary insurer seeks to limit[ ] or eliminate its liability where another primary policy covers the risk.") (citation omitted).  Thus, Gibraltar has failed to produce evidence that Rockingham engaged in an "act or practice was deceptive or misleading in a material way." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP*, 37 N.Y.3d at 176, 171 N.E.3d at 1197 (2021).  Accordingly, Defendant's Motion is granted with respect to Plaintiff's fourth cause of action, and Plaintiff's Motion is denied as to that claim.

## IV.     CONCLUSION

For the reasons set forth herein, the Court denies Plaintiff's Motion in its entirety, denies Defendant's Motion with respect to Gibraltar's first and second causes of action, and grants Defendant's Motion with respect to Gibraltar's third and fourth causes of action.  The parties are directed to appear for a status conference on October 28, 2024, at 11:00 a.m. in Courtroom 820.

Dated:          Central Islip, New York
                September 25, 2024

                                    s/ Steven I. Locke
                                    STEVEN I. LOCKE
                                    United States Magistrate Judge